FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
AUG 26 2015
CLERK
SO. DIST. OF GA

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

RACHEL HUTTO, individually )
and as next of friend of )
Anzley Hutto, )
)
    Plaintiff, )
)
v. ) CASE NO. CV414-224
)
MEMORIAL HEALTH UNIVERSITY )
MEDICAL CENTER, INC.; and OEC )
MEDICAL SYSTEMS, INC.; )
)
    Defendants. )
)

# O R D E R

Before the Court is Plaintiff's Motion to Remand (Doc. 11) to which Defendant OEC Medical Systems, Inc. has filed a response (Doc. 17). For the reasons that follow, Plaintiff's motion is **GRANTED**. Accordingly, this case is hereby **REMANDED** to the State Court of Chatham County, Georgia for further proceedings. Following remand, the Clerk of Court is **DIRECTED** to close this case.

## BACKGROUND

This case stems from injuries suffered by Plaintiff's minor child, Anzley Hutto, during an eye surgery performed by Dr. Frederick Kuhn, M.D. at Defendant Memorial Health University Medical Center's ("Memorial") facility. (Doc. 11 at 1.) On November 19, 2012, Anzley Hutto underwent surgery to decompress

a tumor that was impacting the optic nerve of her left eye. (Doc. 1 at 2.) To assist in the surgery, Dr. Kuhn used a surgical-imaging machine called the InstaTrak 3500 Plus. The machine was manufactured by Defendant OEC Medical Systems, Inc. ("OEC"), and allows surgeons to track instruments inside a patient's body during surgery. Id. Apparently, the machine was owned by Dr. Kuhn, although it was permanently stored at Defendant Memorial's facility. Id.

Unfortunately, Anzley Hutto's left optic nerve was damaged during the surgery, leaving her permanently blind in the left eye.[1] (Id. at 3.) According to Plaintiff, the InstaTrak provided inaccurate readings during the surgery that ultimately led to Anzley Hutto's injuries. (Doc. 11 at 2.) As a result, Plaintiff filed suit on behalf of her minor daughter against Dr. Kuhn, Georgia Nasal & Sinus Institute, P.C., and Defendants Memorial and OEC in the Superior Court of Chatham County, Georgia. (Doc. 11, Attach. 4.) Both Dr. Kuhn and Georgia Nasal & Sinus Institute were voluntarily dismissed on September 8, 2014. (Doc. 1 at 2.) Thereafter, Defendant OEC removed the case to this Court, after which Plaintiff filed her motion to remand.

---

[1] Anzley Hutto suffers from McCune-Albright's syndrome—a serious medical condition involving abnormal tissue growth and other debilitating issues—and had already lost vision in her right eye. (Doc. 1 at 2.) As a result, Anzley Hutto's loss of vision in her left eye has left her entirely blind. (Doc. 11 at 2.)

2

**ANALYSIS**

I.  STANDARD OF LAW

Generally, federal courts are courts of limited jurisdiction: they may only adjudicate cases over which they have been granted jurisdiction by the Constitution or Congress. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994). Specifically, federal district courts have jurisdiction over two types of civil actions: (1) those that involve a federal question, meaning the claim arises under the Constitution, laws, or treaties of the United States; and (2) those that invoke the court's diversity jurisdiction, meaning they involve an amount in controversy in excess of $75,000 and are "between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1332). In cases removed to federal court based on diversity jurisdiction, removal is permissible only "if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2005).

The defendant, as the removing party, normally has the burden of proving the existence of federal subject matter jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319

3

(11th Cir. 2001). Where removal is improper, a party may move to remand the case back to state court. See 28 U.S.C. § 1447(c). All doubts about federal jurisdiction should be resolved in favor of a remand to state court. Burns v. Windsor Ins. Co., 21 F.3d 1092, 1095 (11th Cir. 1994).

Here, both Plaintiff and Defendant Memorial are citizens of Georgia. As a result, it would appear that complete diversity does not exist in this case. However, Defendants argue that Defendant Memorial's citizenship should be ignored under the doctrine of fraudulent joinder. (Doc. 1 at 4-7.) Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity where a defendant has been named solely to defeat diversity jurisdiction. In such cases, the Court may "ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." Henderson v. Wash. Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). However, a motion to remand will not be denied unless the defendant can show by clear and convincing evidence that the non-diverse party was fraudulently joined. Stillwell v. Allstate Ins. Co., 663 F.3d 1329 at 1332 (11th Cir. 2011).

Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant. Coker

4

v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir. 1983) (superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993)). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. Coker, 709 F.2d at 1440. In the instant case, the parties do not suggest that there has been outright fraud in Plaintiff's factual pleading, so the Court need only consider whether there exists a possibility that Plaintiff can prove a cause of action against Defendant Memorial.

The Eleventh Circuit has stated that the pleading standard for a plaintiff to defeat removal based on fraudulent joinder "is a lax one." Stillwell, 663 F.3d at 1329. Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Coker, 709 at 1440-41. Put simply, Plaintiff need not have a winning case against Defendant Memorial: the mere possibility of stating a valid cause of action is sufficient to establish the party's joinder as legitimate. See Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).

To determine whether a party's joinder is fraudulent, the Court will examine Plaintiff's "pleadings at the time of

5

removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). Given the lenient pleading standard afforded to plaintiffs in this situation, however, the Court will view "the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law" in the plaintiff's favor. Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The Court must also apply the pleading standards of the forum state for the underlying claim such that "if there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint . . . remand is necessary." Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1299 (11th Cir. 2007).

II. MOTION TO REMAND

In support of removal and its claim of fraudulent joinder, Defendant OEC insists that Defendant Memorial did not own or maintain the InstaTrak, and that Defendant OEC performed "all periodic maintenance, calibration and repairs" for the machine pursuant to a service contract between the defendants. (Doc. 1 at 6.) As a result, Defendant OEC argues that Plaintiff's negligence claim against Defendant Memorial must fail. Id. In her motion to remand, Plaintiff points out that the service contract referenced by Defendant OEC also includes a number of

6

"customer responsibilities" attributed to Defendant Memorial. (Doc. 11 at 4.) It is because of failure to perform these responsibilities, Plaintiff argues, that Defendant Memorial is potentially liable for negligence because it "fail[ed] to maintain the medical instrumentation known as the InstaTrak in proper working order, capable of being effectively utilized during surgery by Dr. Kuhn." (Doc. 11 at 3.)

In its response, Defendant OEC first argues that Plaintiff has effectively conceded her claim because Defendant Memorial stated in its responses to Plaintiff's interrogatories that it "did not perform any maintenance on, repairs to or calibration of the [InstaTrak.]" (Doc. 17 at 5.) According to Defendant OEC, Plaintiff's failure to offer evidence disputing this statement should result in the denial of her motion to remand. Id. In addition, Defendant OEC restates the argument made in its notice of removal that Plaintiff's allegations against Defendant Memorial are merely legal conclusions without factual support, and that the service contract establishes only Defendant OEC participated in the maintenance of the InstaTrak. (Id. at 9-10.) Defendant OEC contends that, without evidence to counter Defendant Memorial's statements and the terms of the service contract, Plaintiff's claim against Defendant Memorial is unsustainable.

7

The parties are arguing for two slightly different interpretations of Plaintiff's claim against Defendant Memorial and the service contract. In the complaint, Plaintiff asserts that Defendant Memorial had a duty to "maintain the InstaTrak in its custody and control in proper working condition" and that Defendant Memorial breached this duty by "failing to maintain the . . . 'InstaTrak' in proper working order, capable of being effectively utilized during surgery." (Doc. 11, Attach. 4 at 6.) Defendant OEC's argument relies on the proposition that Defendant Memorial's alleged duty to maintain the InstaTrak is wholly precluded by the service contract. That is, that Defendant Memorial had no duties with regard to keeping the InstaTrak in proper working condition, because all those responsibilities were assumed by Defendant OEC pursuant to the service contract.

While Defendant OEC's argument makes some logical sense, the Court finds the service contract's coverage suggested by Defendant OEC as unduly broad and ultimately inaccurate. As Plaintiff points out, the InstaTrak was continually in the custody of Defendant Memorial and the service contract tasks Defendant Memorial with a number of duties related to its care. Specifically, the contract requires that Defendant Memorial be responsible for "ensuring satisfactory power quality and grounding" for the InstaTrak, as well as "repair, replacement,

or disposal of any accessories, power supply equipment, uninterruptible power supplies or consumable items, including but not limited to: batteries, cassettes, copier drums, electrodes, fiber optics, fiber optic bundles, filters, laser tubes, film magazines, patient cables, radiation sources, refrigeration compressors, styli, radiation shields, overhead lights or software." (Doc. 1, Attach. 7 at 7.) In addition, the service contract requires Defendant Memorial to furnish an employee with appropriate technical knowledge to assist Defendant OEC's technical personnel in performing service on the machine.[2] (Id., Attach. 1 at 8.)

Quite simply, the Court finds that the terms of the service agreement allow for the possibility of an arguable claim against Defendant Memorial. The fact that Defendant Memorial's role in maintaining the InstaTrak was minor does not establish that Defendant Memorial's joinder in this case is fraudulent. While the Court makes no judgment as to whether Defendant Memorial's

---

[2] Defendant Memorial has stated in its interrogatories that none of its employees performed "any maintenance on, repairs to or calibration of the [InstaTrak] at any time." (Doc. 17 at 5.) Defendant OEC takes this undisputed assertion to mean that Defendant Memorial cannot be held liable for the InstaTrak's alleged malfunction. Even taking the statement as true, however, the Court finds that Plaintiff has established a potentially viable claim. Because the service contract mandates that Defendant Memorial furnish an employee to assist in performing service, the fact that it failed to do so is sufficient to sustain an arguable negligence claim where the machine's lack of service allegedly caused it to perform improperly.

9

failure to perform any of the aforementioned duties actually resulted in the InstaTrak's malfunction—or even whether there was any malfunction at all—the Court will not conclude as a matter of law that Plaintiff's duties cannot form the basis for a plausible negligence action.

Defendant OEC takes issue with this reading of the service agreement, and argues that Plaintiff has not illustrated how Defendant Memorial's failure to perform its "customer responsibilities" could result in the alleged inaccuracies of the InstaTrak's tracking system that underlie Plaintiff's cause of action. (Doc. 17 at 8.) However, Defendant OEC misunderstands the pleading requirements at this stage in the case. Plaintiff is not required to prove the elements of her claim at this time. Rather, the burden is on Defendant OEC, as the removing party, to show that a breach of Defendant Memorial's duties could not possibly have caused the harms Plaintiff alleges in her complaint. Defendant OEC has failed to offer any evidence or argument to demonstrate the impossibility of Defendant Memorial's alleged breach resulting in the InstaTrak's improper readings.[3] Accordingly, because Defendant OEC has failed to carry

---

[3] Defendant OEC appears to argue that any issue involving the InstaTrak's tracking function necessarily implicates either a hardware or software problem in the machine. (Doc. 17 or 7-8.) However, Defendant OEC offers no evidence to substantiate this assertion. Furthermore, while neither party offers any argument on the matter, the Court finds Defendant OEC's position somewhat

its burden, Plaintiff's motion to remand must be granted. While Defendants may eventually demonstrate that Defendant Memorial's actions or inactions were of no consequence to the InstaTrak's operation, they will not do so in this Court.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion to Remand (Doc. 11) is **GRANTED**. Accordingly, this case is hereby **REMANDED** to the State Court of Chatham County, Georgia for further proceedings. Following remand, the Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 26th day of August 2015.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

puzzling. According to the terms of the service contract, Defendant Memorial was responsible for "repair, replacement, or disposal of any . . . software." (Doc. 1, Attach. 7 at 7.) Because the Court's analysis does not require a final determination as to the root of the InstaTrak's alleged improper readings, however, the issue is moot.